UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
A.M. by her Guardian, STEPHEN E.          :
DIAMOND, ESQ.,                            :
        Plaintiff,                       :
                                         :
v.                                        :          **OPINION AND ORDER**
                                         :
HUDSON VALLEY CEREBRAL PALSY              :          16 CV 1466 (VB)
ASSOCIATION, JOSEPH FARAONE,              :
BEATRICE GUIDA, HOWARD YAGER, and         :
JANE AND JOHN DOE(S) 1-10,                :
        Defendants.                      :
---------------------------------------------------------x

Briccetti, J.:

Plaintiff Stephen E. Diamond, Esq., on behalf of A.M., brings this action against

defendants Hudson Valley Cerebral Palsy Association ("HVCPA"), Joseph Faraone, Beatrice

Guida, Howard Yager, and Jane and John Doe(s) 1-10, resulting from Faraone's alleged sexual

assaults of A.M. while she was under HVCPA's care.  Plaintiff brings claims under Section 504

of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983; and New York state law.

Before the Court is HVCPA, Guida, and Yager's (collectively, "movants") motion to

dismiss the amended complaint (Doc. #29) for failure to state a claim under Rule 12(b)(6).  (Doc.

#21).[1]

For the reasons set forth below, the motion to dismiss is DENIED.

The Court has subject matter jurisdiction pursuant to pursuant to 28 U.S.C. §§ 1331,

1367.

---

[1]     Movants originally filed this motion as a motion to dismiss the original complaint.  (Doc.
#1).  The Court sua sponte granted plaintiff leave to amend the complaint (Doc. #17), and
plaintiff filed an amended complaint.  (Doc. #29).  Movants subsequently informed the Court
they were relying on the previously filed motion to dismiss.  (Doc. #32).

**BACKGROUND**

In deciding the pending motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

A.M. is an adult woman in her fifties.  More than twenty years ago, she was in a motorcycle accident in which she suffered severe head trauma causing a debilitating brain injury. As a result of the accident, she now has significant developmental disabilities, is mentally incompetent, has the functional capacity of a twelve-year-old child, and requires full-time residential care.  "She lacks the capacity for complex decision making and the ability to fully comprehend the consequences of her actions or the actions of those around her.  Because of her limited reasoning skills, she requires close supervision at all times."  (Am. Compl. ¶ 18).

A.M. has no family members actively involved in her life, and she is a ward of the State of New York.  Plaintiff Diamond is A.M.'s state-appointed legal guardian.[2]

HVCPA, which is located in Brewster, New York, in addition to providing various services to people with Cerebral Palsy, provides services to developmentally-disabled adults who suffer from issues related to traumatic brain injuries.  HVCPA receives funding from the State of New York and the federal government and "is licensed by at least two New York State agencies, [the] Office for People with Developmental Disabilities . . . and the Department of Health[,] to provide care for people with developmental disabilities."  (Am. Compl. ¶ 11).

Defendant Faraone was an HVCPA employee and personally cared for HVCPA residents, including A.M.  Defendant Guida was the Chief Operating Officer of Programs for

---

[2]     A.M.'s friend and care-giver, D.L., originally sued on behalf of A.M. as next friend. Diamond moved to be substituted for D.L. (Doc. #48), which was unopposed, and the Court granted the motion.  (Doc. #51).

HVCPA, and in that capacity "was responsible for developing programs and implementing policies and procedures to provide reasonable care for A.M." (Am. Compl. ¶ 13).  Defendant Yager was the Executive Director for HVCPA and "was responsible for supervising the day to day services and reasonable care provided to A.M. while she resided at HVCPA." (Id. ¶ 14). The John and Jane Doe defendants "were directors, executives, agents, servants, and/or employees of HVCPA." (Id. ¶ 15).

While at HVCPA, A.M. was frequently left in Faraone's care.  According to the amended complaint, on June 15, 2015, Faraone brought A.M. into a courtyard at the HVCPA facility and had A.M. perform oral sex on him.  Several HVCPA employees witnessed this incident and immediately reported it to HVCPA supervisors.  Despite these reports, HVCPA supervisors, including Guida and Yager, took no action to protect A.M. from Faraone or to provide medical care to A.M. following the incident.

Several HVCPA employees became concerned when corrective action was not taken, and they suspected Faraone continued to sexually assault A.M.  One employee planted a recording device in an HVCPA elevator, and on September 17, 2015, this device recorded Faraone again having A.M. perform oral sex on him.  The employee took the recording to law enforcement, and Faraone was prosecuted.

"A.M. was hospitalized for repeated vomiting and found to have a urinary tract infection. A.M. was extremely agitated and required additional medication to help calm her because of the mental and physical harm."[3]  (Am. Compl. ¶ 25).

---

[3]     The amended complaint states A.M. was hospitalized on or about September 15, 2015. Given the context of this allegation, however, it appears A.M. may have been hospitalized sometime after the September 17, 2015, incident.

According to the amended complaint, Guida "attempted to have false reports prepared to suggest that HVCPA had made some attempt to take action after the first known sexual assault." (Am. Compl. ¶ 24).

**DISCUSSION**

I.     Legal Standard

In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.    Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act provides in pertinent part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her . . . disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

HVCPA contends plaintiff has failed to state a claim under Section 504.

The Court disagrees.

HVCPA argues a Section 504 plaintiff must satisfy a four-part inquiry to state a claim:

> To establish a violation of the Rehabilitation Act, a plaintiff must demonstrate that she is (1) a handicapped person as defined in the Rehabilitation Act; (2) otherwise qualified to participate in the offered activity or to enjoy its benefits; (3) excluded from such participation or enjoyment solely by reason of his or her handicap; and (4) being denied participation in a program that receives federal financial assistance.

(Defs.' Br. at ¶ 8, citing C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826 (2d Cir. 2014); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268 (2d Cir. 2009); Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009); Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998)).  HVCPA then argues plaintiff fails to state a claim for failure to satisfy the second element because A.M. was qualified to receive HVCPA's services only because of her disabilities.

However, this four-part test is applicable only when plaintiff's Section 504 claim is based on allegations the victim was "excluded from the participation in," or "denied the benefits of, . . . any program or activity receiving Federal financial assistance."  Here, plaintiff relies on a different theory, namely that A.M. was "subjected to discrimination under" a federally-funded program due to HVCPA's deliberate indifference to her various needs.

In the above-mentioned cases HVCPA cites, the plaintiffs' Section 504 claims were based on a theory of discriminatory exclusion or denial.  None of these cases considered the validity of a Section 504 deliberate-indifference discrimination claim.  Thus, HVCPA's statement of law is inapposite to the extent it is used to support the proposition that the four-part test is the exclusive means by which a plaintiff can make out a prima facie Section 504 case.

5

The Court concludes plaintiff may properly bring a deliberate-indifference discrimination claim under Section 504 without showing the disabled individual was otherwise qualified to receive the federally-funded benefit.

First, other courts have considered and allowed Section 504 claims based discriminatory deliberate indifference without a showing the victim was otherwise entitled to the federally-funded benefit or program.  See, e.g., Werth v. Bd. of Dirs. of Pub. Sch., 472 F. Supp. 2d 1113, 1127 (E.D. Wis. 2007); K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F. Supp. 2d 343, 358–361 (S.D.N.Y. 2005); Biggs v. Bd. of Educ., 229 F. Supp. 2d 437, 444–45 (D. Md. 2002).

Second, requiring a plaintiff to show the beneficiary was otherwise qualified to receive the federally-funded benefit or participate in the federally-funded program would eliminate Section 504's third clause, which prohibits subjecting a disabled person to "discrimination under any program or activity receiving Federal financial assistance."  This clause pertains to a categorically different type of action than the other two clauses, which prohibit disabled persons from being discriminatorily denied such benefits or excluded from such programs.  The third clause assumes the person is receiving benefits or participating a program, but is nevertheless subject to discrimination.

Finally, the Court finds support for its conclusion in Title IX of the Education Amendments of 1972, which is a similarly worded statute,[4] and which allows for discrimination claims based on deliberate indifference to the needs of the person receiving the federally-funded benefit.  Under Title IX, a school is liable when it "acts with deliberate indifference to known

---

[4]     "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," subject to exceptions.  20 U.S.C. § 1681(a).

acts of harassment in its programs or activities," and the harassment is sufficiently "severe, pervasive, and objectively offensive."  Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999); see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290–93 (1998) (concluding the two statutes have parallel structures and purposes, and construing them to have parallel meanings).  Davis and Gebser rely on a textual analysis of Title IX to conclude it allows for deliberate-indifference claims.  The text of Section 504 is materially indistinguishable from Title IX,[5] and therefore the analysis in Davis and Gebser is instructive.  Indeed, the Supreme Court has applied this same reasoning to construe Title IX in the light of another similar statute, Title VII of the Civil Rights Act of 1964.  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. at 286 ("The two statutes operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate.").

Accordingly, the Court concludes plaintiff can state a Section 504 claim for deliberate indifference without showing A.M. was otherwise qualified to participate or receive the benefits. HVCPA does not argue the amended complaint fails to state this type of claim.

III.    Section 1983

Plaintiff also claims HVCPA, Guida, and Yager are liable under Section 1983 for violating her constitutional rights.  To state a claim under Section 1983, "plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997).

---

[5]     Title IX prohibits sex discrimination in federally-funded education programs, whereas Section 504 prohibits disability discrimination in all federally-funded programs.

Movants argue plaintiff's Section 1983 claims must be dismissed under Rule 12(b)(6) because they did not act "under color of state law."

The Court disagrees.

HVCPA is a private entity. As a private entity, its acts are understood to have been conducted "under color of state law" in three circumstances:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state," ("the public function test").

Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001)) (alterations omitted).

Plaintiff cites Perez v. Sugarman, 499 F.2d 761, 765 (2d Cir. 1974), to argue that movants acted under color of state law under both the public function test and the close nexus test. Movants argue Perez is inapposite because it "dealt with a private child care agency, not an agency like HVCPA which provides care to the developmentally disabled." (Defs.' Reply ¶ 21). Movants contend this difference is meaningful because "Perez emphasized the comprehensive statutory regulatory scheme applicable to private child care agencies." (Id.).[6]

Regardless of whether HVCPA was subject to a sufficient degree of regulation, movants fail to address Perez's alternative and independent basis for its conclusion that the defendant

---

[6]   Movants do not contend agencies that care for adults with severe developmental disabilities are not similarly heavily regulated. Neither side has provided the Court with the relevant regulatory scheme to which HVCPA was subject. Plaintiff merely alleges HVCPA was licensed by at least two New York State agencies. As explained below, the Court concludes HVCPA was performing a public function and therefore it need not venture into this complex area of state regulation.

institution acted under color of state law: the public function theory.  499 F.2d at 765 ("In

accepting and retaining custody of children alleged to have been 'neglected' or 'abandoned,'

child-caring institutions of the type we have in this case perform a 'public function.'").  To be

sure, A.M. is not a child, and thus Perez involved a different type of care facility.  But, the Court

concludes this is a distinction without a difference, at least when, as here, the victim is legally

and factually incompetent, and is a ward of the state.  See Thomas v. St. Vincent & Sarah Fisher

Ctr., 2006 WL 2418974, at *5 (E.D. Mich. Aug. 21, 2006) (holding that care for a mentally

disabled person who is a ward of the state is a public function).  The Court is aware of no reason

to deem the person's age determinative.

Nevertheless, movants argue Sybalski v. Independent Group Home Living Program, Inc.,

546 F.3d 255 (2d Cir. 2008), requires dismissal because it held (i) New York's regulatory

apparatus regarding "facilities providing care to the developmentally disabled [was insufficient]

under the close nexus or joint action test," and (ii) "the public function test was not satisfied

because providing care for the mentally disabled was not a function traditionally under the

exclusive authority of the state."  (Defs.' Reply ¶¶ 21–22).

Movants ignore a critical aspect of Sybalski which make it readily distinguishable—the

alleged victim in that case was not a ward of the state, but rather was the legal ward of his

parents.  In that case, the parents were the legal guardians of a resident at a group home for

adults with cognitive disabilities, and they sued under Section 1983 regarding the conditions of

their son's care.  Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d at 256–57.

Here, plaintiff alleges that A.M. is a ward of the state, and that New York licensed and

paid HVCPA to care for A.M.  HVCPA and its staff were not simply caring for mentally

disabled individuals, as in Sybalski.  As a ward of the state, A.M. was "[s]omeone who is housed

by, and receives protection and necessities from, the government."  Ward – Ward of the State, BLACK'S LAW DICTIONARY (10th ed. 2014).

Accordingly, HVCPA and its employees, in providing care for A.M., were acting under color of state law.  See Brooks v. Richardson, 478 F. Supp. 793, 795 (S.D.N.Y. 1979) ("As an authorized agency empowered to care for and take custody of children who are wards of the state, [defendant institution] was acting under color of state law.").

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #21).

Dated: February 17, 2017
         White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

10